```
 1                    UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3    _____

 4                                 )
      UNITED STATES OF AMERICA,     ) CR14-00122-RSM
 5                                 )
                   Plaintiff,       ) SEATTLE, WASHINGTON
 6                                 )
      v.                            ) July 31, 2014
 7                                 )
      MUSAB MOHAMMED MASMARI,       ) Sentencing
 8                                 )
                   Defendant.       )
 9
      _____
10
                   VERBATIM REPORT OF PROCEEDINGS
11           BEFORE THE HONORABLE RICARDO S. MARTINEZ
                   UNITED STATES DISTRICT JUDGE
12    _____

13
      APPEARANCES:
14

15     For the Plaintiff:     Todd Greenberg
                              Assistant United States Attorney
16                            U.S. Attorney's Office
                              700 Stewart Street, Suite 5220
17                            Seattle, Washington  98101

18

19     For the Defendant:     Charles D. Swift
                              Swift & McDonald
20                            2003 Western Avenue
                              Suite 330
21                            Seattle, WA  98121

22                            Jeffrey D. Cohen
                              Law Offices of Jeffrey D. Cohen
23                            1325 4th Avenue
                              Suite 1402
24                            Seattle, WA  98101

25
```

1      THE CLERK:  This is the sentencing hearing in United

2  States versus Musab Masmari, cause number CR14-122.  Will

3  counsel please rise and make their appearances for the

4  record?

5      MR. GREENBERG:  Your Honor, Todd Greenberg for the

6  United States.

7      THE COURT:  Mr. Greenberg.

8      MR. SWIFT:  Good morning, Your Honor, Charles Swift

9  and Jeff Cohen on behalf of Mr. Masmari.  Also present with

10  Mr. Masmari is --

11      THE INTERPRETER:  Hiba Burtle, Your Honor, standby

12  interpreter.

13      THE COURT:  Could you spell your last name for our

14  record?

15      THE INTERPRETER:  "B" as in bravo, "U," "R" as in

16  rabbit, "T" as in Tom, "L" as in lady, "E" as in echo.

17      THE COURT:  Thank you very much.

18      MR. SWIFT:  She will be on standby.  Mr. Masmari has

19  had significant English training, but if it moves fast or

20  there are legal terms sometimes he has trouble following.

21  But he's not going to ask to have translation unless he's not

22  understanding what's going on.

23      THE COURT:  No problem.  Mr. Masmari, if at any point

24  in time you don't understand, don't hesitate to use the

25  services of our interpreter.  Alright.  You may be seated.

1      Counsel, let me indicate for you and for our record

2   exactly what the court has received and had a chance to

3   review prior to our scheduled hearing this morning.

4      The court has reviewed the plea agreement of the parties,

5   the government's sentencing memorandum, the defendant's

6   sentencing memorandum, the psychiatric report that was

7   submitted, the statement of responsibility, and the court has

8   reviewed at least one victim impact statement.  And, finally,

9   the court has reviewed the presentence report prepared by

10   Senior U.S. Probation Officer Rick Cowan, who is also present

11   with us this morning.

12      Trusting the parties have had that same opportunity to

13   fully review all of these materials, Mr. Greenberg, if I

14   could start with you, tell me what the government's

15   recommendation is.

16          MR. GREENBERG:  Thank you, Your Honor.  Your Honor,

17   we're recommending that the court impose a sentence in this

18   case of 60 months, five years in federal prison.  And that is

19   a very serious, and it's a lengthy sentence that is warranted

20   by the defendant's conduct in this case.

21      That sentence is first warranted because the offense

22   itself was so serious and so dangerous.  The defendant went

23   to Neighbours Nightclub, a popular nightclub here on Capitol

24   Hill, on New Year's Eve.  The place was packed, it had

25   approximately 750 patrons inside the club that night, some of

1   whom are here in the courtroom.  He brought with him a can of

2   gasoline.  So this was not a spur-of-the-moment thing, it was

3   a preplanned crime.  He doused the stairs and lit them on

4   fire, just minutes after midnight on New Year's Eve.  And he,

5   himself, made a quick escape from the club.

6       And eventually, a couple weeks later, he tried to make

7   another escape, he tried to flee the country.  But it was

8   through a very, very thorough and successful investigation by

9   the Seattle Police Department and the FBI that allowed them

10  to solve this crime, identify Mr. Masmari as the perpetrator,

11  and apprehend him as he was trying to flee.

12      But it wasn't just the police department and the FBI who

13  solved this crime.  This is one rare and I think impressive

14  aspect of this case.  It was also solved by some of the

15  victims, some of the very people who were victimized by

16  Mr. Masmari, assisted in identifying him, because there was

17  video footage taken at the club, which was eventually

18  released through the media seeking assistance in identifying

19  the perpetrator .  And that was successful.  So a unique

20  collaboration between the victims, the community, and law

21  enforcement, in solving this terrible crime.

22      Another reason this sentence is appropriate, a five-year

23  sentence, is that it actually presented a serious risk of

24  injury and potentially even death.  And this is not in

25  dispute.  The defendant has admitted this in the plea

1    agreement, he's agreed to the highest possible base offense

2    level based on that.  And but for the really, really

3    responsible and impressive response to this event by the

4    management of Neighbours, the staff at Neighbours, and by

5    those 750 folks who were at Neighbours, this could have been

6    a lot worse.  And we wouldn't be talking about five years;

7    and we may not even be talking about the crime of arson.

8        The people who were there that night deserve a lot of

9    credit for how they reacted.  The club was prepared for

10    something like this.  There was no panic.  The fire was put

11    out quickly.  And the club was evacuated calmly and

12    efficiently.  And everyone should be commended for that.

13        Another reason the government is advocating for a

14    five-year sentence here is the motivation for this crime.

15    Now, as we indicated, and as I will tell the court, the

16    balance of the evidence here indicates that this was a hate

17    crime, that the defendant had an anti-gay bias, and that was

18    why he did what he did.  And there are specific reasons to

19    support that, which we've outlined in our memo.  The

20    defendant, to a confidential witness, has made statements,

21    general statements expressing hostility towards

22    homosexuality.

23        And he made very specific admissions to another witness,

24    someone he was close to, someone who was not an informant of

25    any kind, just a witness in the case.  And in explaining what

1   he did, in his words, not someone else's words, in his words,

2   he said he, "Burned a gay club because what these people are

3   doing is wrong."

4        Now, as the court sees in the papers, the government is

5   not advocating for the specific enhancement under Chapter

6   3(a), because frankly it's moot in this particular case.

7   That enhancement would not result in a sentence above what

8   we're already asking for, a sentence of 60 months.  And so to

9   avoid any appeal issues and that sort of thing, we're just

10  not asking the court to impose the specific factor.  But

11  nonetheless, the court should be mindful of the evidence in

12  the case.

13       Now, there's some discussion in the defense papers about

14  why this case is here in federal court.  And I can tell the

15  court why it's here.  And that's because of the seriousness

16  of this offense, all of the things that I've just outlined,

17  is why this case is in federal court.  As indicated by the

18  defense, the standard range that the defendant was facing in

19  King County Superior Court, as he was initially charged, was

20  21 to 27 months.  The sentence here in federal court is more

21  than double that, which the government believes is much more

22  appropriate than the sentence in state court.

23       Not only is it a longer sentence, but the supervision --

24  and this is a key component in this particular case -- the

25  supervision that will follow the defendant's release from

1    prison, we would submit, is much more arduous here in federal

2    court.

3        And I commend the probation office for identifying two

4    conditions in particular that we strongly support.  And that

5    is that when the defendant is released and is put on three

6    years of supervision, that he be mandated to engage in

7    whatever recommended mental health and substance abuse

8    treatment the probation office deems appropriate.  Because it

9    is clear, and I think both parties agree on this point, that

10   mental health and/or substance abuse problems contributed,

11   not only to this crime, but to really the out-of-control

12   conduct that the defendant was engaged in for about a year,

13   before it culminated on New Year's Eve at Neighbours.

14       Now, as I indicated, some of the victims of this offense

15   are here in the courtroom and I wanted to identify two of

16   them.  Mr. Steven Tracy is here.  He was the manager at

17   Neighbours, and along with others, is responsible for the

18   outstanding handling of this event.  We also have an employee

19   of the club, Shawn Knittel, who is the gentleman that

20   submitted the letter to the court that the court referenced

21   having reviewed.  And Mr. Knittel would like to speak to the

22   court.  And I would ask the court to permit him to do so at

23   the time of this hearing that the court deems appropriate.

24       Mr. Knittel's letter expressed feelings that I think

25   others that were there at the club must share.  One can only

1    imagine the emotional visceral reaction that someone would

2    have had to this event, that was at the club that night.  And

3    I appreciate that and understand that.  And so when we read

4    things like, you know, five years is not enough time, this

5    should be 750 counts of attempted murder, I think we can all

6    appreciate that sentiment.  Now, that sentiment and perhaps

7    some of that common-sense logic doesn't always translate into

8    what is legally cognizable and what crimes can be charged in

9    court.  But we want to acknowledge that very reasonable and

10   understandable reaction.

11        And let me conclude by addressing one issue that the

12   defense I think alluded to in their papers and mentioned to

13   me before the hearing.  And I want to be very clear about

14   this.  There is some concern that the government may be

15   breaching the plea agreement, and really they haven't used

16   that word, but I just want to be very clear to this court in

17   our sentencing memorandum and in my remarks today, we are

18   sticking with our recommendation in the plea agreement.  We

19   are recommending a 60-month sentence.

20        And there is some confusion, I think, that was caused by

21   using terms like "upward departure" in my sentencing

22   memorandum, and I don't know what message was conveyed to the

23   court by that.  I'm confident that it was clear that we were

24   advocating for a 60-month sentence, which was the agreement

25   in the plea agreement.  But I just wanted to reaffirm that to

1  allay any concerns the defense may have, and make sure the

2  court understood clearly the government's position here.

3       And with that, that's all I have to say this morning, Your

4  Honor.

5            THE COURT:  Thank you, counsel.  Could we have

6  Mr. Knittel take the podium?

7       Good morning.  If you would spell your last name.

8            MR. KNITTEL:  Yes, it's K-N-I-T-T-E-L.

9            THE COURT:  And I did read the three-or-four-page

10 letter you submitted.  Thank you for submitting it.  What

11 else would you like to say today?

12           MR. KNITTEL:  I just want to say that in coming here

13 today to address the court, I stand before you as someone

14 that is a community leader and organizer in our community,

15 someone that oftentimes is a spokesperson for that community.

16 Neighbours Nightclub has been a part of a community of people

17 that has seen oppression for decades.  Neighbours has been

18 around for three of those decades.  That's where we organize.

19 It's more than just a dance club.  It's more than just a bar.

20 It's where people have birthdays.  It's where people have

21 anniversary parties.  It's where we raise money to sustain

22 our services.

23      The individuals that were in the nightclub that night,

24 among that 750, were some of our most gifted, talented

25 leaders.  When you take into account -- while every life is

1    important -- but when you take into account some of the

2    people that were in there, I think that that's something that

3    has to be stated.  There are individuals that are just really

4    irreplaceable to us.  And so that adds to it.

5         Where the community was very much affected by this is not

6    only was it a blatant attack on our lives, you also have the

7    feeling of, well, is this going to happen again?  And people

8    start to withdraw and get very strange and very scared from

9    all of this.  And it leads to kind of a disruption of the

10   whole community.  It's not just a bar culture, like some

11   people might think.  So you have a much greater impact than

12   just that we saved everybody from getting murdered,

13   basically.

14        I do have to say, though, we got everybody out of there so

15   fast, half of the nightclub was outside in the alley and

16   didn't even know why they were out there.  It was so skilled.

17   And I'm very, very proud of that, because we read around the

18   world hundreds of people burn in fires like these.  But, you

19   know what, if you look at the worst nightclub fires around

20   the world, it's not arson, it's pyrotechnics, it's bad

21   wiring.

22        This is someone who came down there -- when you go to set

23   arson, you have a choice, on any building, to set that

24   building on fire with people in it, or set that building on

25   fire without people in it.  This individual chose to do that

1   on our busiest night of the year.  I think that that right

2   there is way more than a five-year sentence.  I'm actually

3   disgusted by the five years as the maximum -- or the minimum,

4   I guess.  I know that members of the community have expressed

5   to me that they wanted me to come here today and say that.

6   People are sickened by that number.  You read what I wrote, I

7   don't want to repeat everything.  But I stand by that

8   statement.

9        Having said that, I do think that the Seattle Police

10  Department and the FBI, all the work that everybody has

11  done -- there were some disagreements along the way, but at

12  the end of the day we all worked together as just one city,

13  one community, and I have to say that we're happy with all of

14  that.

15       And thank you for letting me address the court today.

16            THE COURT:  Thank you for your comments.

17       All right.  Mr. Swift.

18            MR. SWIFT:  Thank you, Your Honor.  I want to begin

19  in three areas.  First, we join the United States in

20  recommending a 60-month sentence.  We know the court can

21  agree with probation that 60 months is the guideline sentence

22  in this case, that's the recommended guideline sentence

23  because of the mandatory minimum.  The scored score was

24  lower, but in cases where it is higher, the score goes to 60.

25  So the question before this court is to whether to impose --

1    the defense agrees that you cannot impose a sentence below

2    60 months, that the law requires you in this case to impose a

3    60-month sentence at a minimum.  The question before the

4    court today is whether to impose anything higher, and we

5    think that for the following reasons the court should not do

6    that.

7        (A) The recommendation of the parties; (B), to the extent

8    that the United States has argued that a hate-crime

9    motivation is here, we think that to impose based on that, to

10   vary or depart above the guideline sentence, either because

11   of disagreement with the sentence, or because of the belief

12   that the 3500 factors would require a higher sentence, would

13   be completely improper by the court.  One, the guidelines

14   require a hearing, and we have not had a hearing.  And,

15   secondly, the statements relied on, as we've cited in our

16   brief, have been found by other appellate courts not to be

17   reliable.

18       What we simply have is an out-of-court statement -- and

19   while evidence, the Rules of Evidence do not apply here, it's

20   from an anonymous person.  Statements simply contained in

21   probation reports, or such -- that the court does not even

22   have the 302 into evidence from which they were taken, or

23   context, and the defense has no opportunity to address,

24   because we have no idea when it was made, who it was made to,

25   or what circumstances it was made under, I simply have

1    quotes -- are not reliable on which to base any departure

2    above the 60 months, Your Honor.  And to rely on such would

3    be improper, in the defense's opinion.

4        Secondly, the factor inside the guidelines, also as noted

5    by the government, with regards to the risk posed, is already

6    imposed in the guidelines.  And we would note that to the

7    extent there is some disagreement, that the 60-month

8    mandatory is, again, and I agree with the government, changes

9    the guidelines, in this case increases it by more than

10   18 months.  So for those purposes we would say that again

11   there would be no argument to depart from the guideline

12   sentence of 60 months based on the risk posed.

13       The last area, Your Honor, is the 3500 factors themselves.

14   And here we would draw you to the defendant's mental health

15   analysis, and I think where the parties agree.  The parties

16   agree that Mr. Masmari is an alcoholic, sir.  He hasn't been

17   drinking very long, but he's been drinking very badly.  He

18   has demonstrated a rapid decline.  I would note in the mental

19   health report that the only reason Mr. Masmari is not rated

20   as severe is because he's been drinking for so short a period

21   of time he has yet to suffer the health consequences that are

22   required for the severe; in other words, his liver failing,

23   that sort of thing, that we typically look at in severe

24   alcoholism.  Other than that, he displays everything.

25       We agree, in fact, I think the court should go farther and

1   find that he has a severe problem, that the court should

2   order inpatient treatment as part of this, or suggest to the

3   prison system that he receive inpatient.  I think it's

4   extremely important that he receive such treatment, because

5   that treatment -- and this is where I agree with the

6   government -- that treatment is absolutely essential to his

7   rehabilitation.  His criminal conduct coincided with his

8   entrance into alcoholism.  And I think it is a fair inference

9   for someone of this age, who had not had it previously, that

10  if we can cure the drinking, we can rehabilitate the person.

11  Prison has little rehabilitation left, but this is one area,

12  and I think it would actually serve the purposes.

13       So, for the reasons we set forth, one, we urge the court

14  to not only find that he has a severe alcohol and drug

15  problem, he's also abused drugs, and I think it would be

16  appropriate to receive the treatment, I would say he's

17  primarily an alcoholic, and find that he has a severe problem

18  and order appropriate treatment as part of that.  Number two

19  is to abide by the sentencing -- by the guideline

20  recommendations.  And that's all that I have, Your Honor.

21       Mr. Masmari -- one last note.  Mr. Masmari has already

22  made his statement of responsibility.  That statement was

23  basically given to me.  He told it to me over a period of

24  time, then I wrote it up, because while Mr. Masmari speaks

25  English, the reading and writing -- in fact every document in

1    this case I've read to him.  He speaks English fairly well,

2    but as someone who studied it, writing it is a little more

3    difficult.  And so he helped me prepare it.  I wrote it out

4    for him.  Then I read it to him and he signed it.

5        Under those circumstances Mr. Masmari stands on that

6    statement and does not desire to make a statement to the

7    court.

8            THE COURT:  Thank you, counsel.  One question before

9    you step down.

10           MR. SWIFT:  Certainly.

11           THE COURT:  I understand that restitution is yet to

12   be determined.  Do you know if we have a number at all?

13           MR. SWIFT:  I have not received a number.  And I

14   agree on the law, restitution -- this court is required to

15   order restitution.  I don't have a number, however.  I

16   suggested $1,000, in the absence of information.

17           THE COURT:  All right.  Thank you.

18           MR. GREENBERG:  Your Honor, I can address that, too,

19   I was intending to do that a little bit later.  We are still

20   waiting on the specific information.  So we were going to ask

21   the court, as to the restitution, to set a hearing out

22   90 days.  And we'll try to get more specific information as

23   to that.

24           THE COURT:  All right.  Thank you, Mr. Greenberg.

25   Counsel, let me take a moment and check with our probation

1   officer, Mr. Cowan.  Thank you very much for your presentence

2   report.  Having heard from counsel, is there anything else

3   you would like to add this morning?

4        THE PROBATION OFFICER:  Just briefly, Your Honor, of

5   course I've joined in the parties' recommendation for a term

6   of imprisonment of 60 months, which is the mandatory minimum.

7   I did that with a fair bit of reservation, and in part

8   because of the very close call, whether or not to apply the

9   hate-crime guideline.  But in talking with both counsel,

10  understanding that proof beyond a reasonable doubt was

11  required, and the kind of uncertainty of the nature of this

12  witness caused us to not apply that guideline.

13       Another factor that weighed into the guideline

14  calculations themselves was a very close call whether to

15  apply, in the arson guideline, the cross-reference involving

16  if death was intended to be caused, or serious bodily injury

17  is intended to be caused.  The guidelines allow for a

18  cross-reference to the most analogous guideline.

19       If you did that and applied a second degree murder

20  guideline, you'd have a base offense level of 38.  You'd

21  subtract 3 because it was an attempt under 2X, I believe 1.1,

22  then an additional level for acceptance of responsibility.

23  The guideline range could be 121 to 151.  But we didn't go

24  that way.  It didn't seem contemplated.  And the defendant's

25  intent in this case is somewhat of a mystery, given the

1    absence of the cooperating witness, as Mr. Swift has pointed

2    out.  Those factors led us to join in the parties'

3    recommendation.  But I think it was a very close call and

4    there are very many, very many aggravating circumstances.

5         As Mr. Knittel pointed out, this case could have been a

6    horrible, horrible tragedy in another realm.  But there are

7    aggravating circumstances that may not have been fully

8    fleshed out in my report.

9             THE COURT:  Thank you very much.

10        Counsel, you're aware there is basically a three-step

11   process of imposing any federal sentence.  Number one, the

12   court has to calculate the accurate guideline range for the

13   offense of conviction; secondly, the court should look at any

14   traditional departure or variances involved; and, finally,

15   the court is to look at all sentencing factors, specifically

16   those delineated in 3553(a); and then weighing and balancing

17   all those to come up with a sentence that is appropriate

18   after considering, as I've indicated, every single one of

19   those factors, a sentence that is not more than necessary to

20   effect sentencing.

21        Step one, in this particular case the defendant pled

22   guilty to the crime of arson.  That has three elements.  One,

23   he knowingly and maliciously damaged or destroyed a building

24   or other real property; second, that the building or real

25   property was used in interstate commerce, or in any activity

 1    affecting interstate commerce; and, finally, that defendant

 2    used means of fire or an explosive to damage the building.

 3        As both sides have indicated in their sentencing

 4    memoranda, there has been disagreements as to whether or not

 5    the court can look at this as a hate crime in terms of adding

 6    the enhancement.  Both sides are asking the court not to do

 7    so, for the reasons basically articulated by Mr. Swift here

 8    in court, that we have an out-of-court statement, we've not

 9    had any kind of evidentiary hearing to have that tested or

10    contested in any way, and that we basically have a lack of

11    information or lack of evidence as to what happened to be

12    able to make that leap in terms of the enhancement.

13        The government also requests that the court not consider

14    that as an enhancement, also making the additional argument

15    it probably wouldn't make a difference in calculation of the

16    guideline range, because it would get us only up to basically

17    pretty much the same range as what the government is

18    requesting in their sentence of five years, 60 months.

19        Counsel, the court is not going to use that enhancement,

20    for the reasons indicated by Mr. Swift.  But I think that

21    common sense dictates, as Mr. Greenberg indicated, that what

22    we don't know for sure is the motivation behind all of this.

23    But common sense tells us exactly what was on Mr. Masmari's

24    mind at the time he set this fire.

25        The parties have agreed that the court is to consider the

1   fact that the defendant's actions created a substantial risk

2   of injury or death to someone as an aggravating factor, and

3   that's what gets us to the current range of 37 to 46 months.

4   He falls in Criminal History Category 1.  The total offense

5   level would be, I believe, 21, calling for an advisory range

6   of 37 to 46 months.  However, because of the mandatory

7   minimum of 60 months, the court may not impose anything less

8   than 60 months in this particular case.

9       We all agree on the guideline calculations.  The

10  recommendation by both sides is for the court to impose a

11  60-month sentence for all the reasons indicated in your

12  sentencing memos and also articulated here in court.

13      In looking at the other factors that remain, the court is

14  to consider the nature and circumstances of the offense and

15  the history and background of the defendant.  The nature of

16  this particular offense is an extremely troubling one,

17  extremely serious one.  The circumstance of this offense are

18  greatly concerning.

19      As Mr. Knittel so eloquently stated, both in his written

20  letter to the court and his comments here this morning, but

21  for the actions of some very quick thinking folks, we could

22  have had a tremendous tragedy that particular night.

23      My understanding is that the fire was set, and the gas can

24  still containing more than half of its contents, the gas can

25  was set fairly close to where the fire started.  If that fire

1    was not put out as quickly as was done in this particular

2    case, as efficiently, by the heroic actions of the people

3    that were present, and that gas can explodes in any way, the

4    resulting panic alone would have caused tremendous potential

5    injury or death to many of the 750 patrons who were inside

6    that building.

7         This is also troubling for another reason.  From the

8    defendant's perspective I get, I was in an alcoholic

9    blackout.  I don't remember much of what was going on.  Yet

10   looking at the circumstances of this offense, this was not a

11   spur-of-the-moment type of crime.  It took very careful

12   planning and forethought, obtain the gas can, fill it with

13   gasoline, smuggle it into the club, execute the plan, go to

14   the stairwell, light the fire, and then exit as quickly as he

15   can to save himself, leaving everybody else in there to fend

16   for themselves.

17        We're talking about the busiest night of the year.  As

18   Mr. Knittel said, the majority of nightclub fires start for

19   many different reasons, pyrotechnics is one, bad wiring.  And

20   even in those situations when they start accidentally, we've

21   seen the results of what happens if that fire is not put out

22   as quickly as this one was.

23        When one looks at the circumstances, the history and

24   characteristics of the defendant, it's also concerning.  Yes,

25   I understand he falls in criminal history category of 1.  But

1    I believe that his contacts with law enforcement in the past,

2    the way he has reacted when confronted in the past, the

3    incidents of harassing other people -- one witness even

4    described him, I believe, as someone who had been terrorizing

5    the neighborhood, arrested on multiple occasions for assault,

6    being in a vehicle while intoxicated, violating a domestic

7    violence no-contact order.

8        I don't have any doubt that the criminal conduct in this

9    case was fueled by that substance abuse, particularly

10   alcohol, and perhaps even mental issues or both.  But the

11   court feels that the community does need to be protected from

12   the defendant in the future and will impose certain mental

13   health and substance abuse conditions as part of the

14   supervised release, to try to deal with those issues.

15       The court is also concerned and should be focusing on the

16   3553 factors, that the sentence imposed be a reflection as to

17   the defendant's own -- let me restate that.  The court is

18   concerned that in this particular case what I get from the

19   defendant is not even an acceptance of the consequences of

20   what he's done.  Yes, I read the statement of responsibility

21   that he submitted.  I find it incredible.  As I said, common

22   sense and looking at all the circumstances that led up to

23   this particular offense, it is not believable that he would

24   have been in an alcoholic blackout.  There was way too much

25   planning both before and after for that to really be the

1   case.

2        Counsel, after considering all of the 3553(a) factors that

3   are present in this particular case, the court will impose

4   the following sentence:  He will be placed on three years of

5   supervised release, once he is released from custody.  The

6   court finds he does not have the financial ability to pay any

7   fine, therefore the fine will be waived.  Restitution is

8   undetermined at this point in time.  We will set a hearing

9   approximately 90 days out to see if the parties can agree on

10  restitution.  If not, the court can make a determination at

11  that time as to what the restitution amount should be.  The

12  only other monetary penalty imposed is the mandatory special

13  assessment of $100.

14       That only leaves the amount of custodial time to impose.

15  The recommendation by both sides is a five-year sentence.  In

16  this particular case Mr. Cowan from probation indicated that

17  if one looks at the potential cross reference here to this

18  particular offense, and I'm looking at the Section 2K1.4.

19  Arson, property damage by use of explosives.  That reads, "If

20  death resulted, or the offense was intended to cause death or

21  serious bodily injury, apply the most analogous guideline

22  from Chapter 2."  That is the offenses against person

23  chapter.

24       And Mr. Cowan indicated doing that would put us into the

25  attempted murder or even murder second guideline range.

1   Looking at Mr. Masmari's guideline range here, it could

2   potentially very easily have been in the neighborhood of 120

3   to 150 months.

4       The court also feels in this particular case that there

5   are grounds for departure from the recommended sentence.

6   Looking at 5K2.0, grounds for departure, (a)(2) talks about

7   departures based on circumstances of a kind not adequately

8   taken into consideration.

9       And Section (b) under (2) reads, "A departure may be

10  warranted in an exceptional case in which there is present a

11  circumstance that the Commission has not identified in the

12  guidelines but nevertheless is relevant to determining the

13  appropriate sentence."

14      It goes on to indicate that, "Departure may be warranted

15  in an exceptional case, even though the circumstances that

16  form the basis for the departure is taken into consideration

17  in determining the guideline range, if the court determines

18  that such circumstance is present in the offense to a degree

19  substantially in excess of, or substantially below, that

20  which ordinarily is involved in that kind of offense."

21      The elements of arson, as the court has indicated earlier,

22  using fire to cause damage to a building, and taking into

23  account that substantial injury or death could have resulted,

24  in this case the court finds that this is that exceptional

25  case based on the number of people present inside that

1  building, based on the fact that it was New Year's Eve, the

2  busiest night of the year, based on the fact that if that

3  fire had been just a few more seconds away from being

4  uncontrolled, the court has no doubt that serious injury or

5  death would have occurred to patrons of that club.

6      The court is satisfied that this is the exceptional type

7  of case that merits a departure.  The court will not impose

8  the 60 months recommended but will impose something more

9  closely to the range discussed for injury to persons.  The

10  court will impose 120 months of custodial time, with credit

11  for all time served in this cause number up until now.

12      Mr. Swift, are you requesting the court make a

13  recommendation to BOP about placement at a particular

14  facility?

15          MR. SWIFT:  No, sir.

16          THE COURT:  Counsel, the only other portion of

17  sentencing are the conditions of supervised release.  The

18  court will impose the five conditions that are set out in

19  Mr. Cowan's presentence report.  They will be imposed exactly

20  as set out in that presentence report.  Let me briefly

21  summarize them for purposes of our hearing.

22      Defendant will participate, if so instructed by probation,

23  in a program approved by them for treatment of addiction,

24  drug dependency, or substance abuse.  He is to be abstain

25  from using any alcohol or any other intoxicants during the

1   entire period of supervision.

2       No. 2, he will provide probation with access to all

3   requested financial information, including any authority

4   needed to conduct credit checks or obtain copies of any

5   income tax returns filed in the future.

6       No. 3, he will participate, if so directed in a mental

7   health program, if approved by U.S. Probation.

8       No. 4, has to do restitution.  As indicated we will

9   schedule a hearing for approximately 90 days from today.

10      And No. 5, he will submit any property, his person, his

11  offices, safety deposit boxes, vehicles, to searches

12  conducted by U.S. Probation or any other law enforcement

13  officer, at a reasonable time in a reasonable manner based

14  upon reasonable suspicion.

15      That will be the sentence.

16          MR. GREENBERG:  Your Honor, I have a judgment, if I

17  can show it to counsel.

18      May I approach, Your Honor?

19          THE COURT:  You may.  Counsel, two final matters for

20  the record.

21      No. 1, as the proposed judgment form accurately reflects

22  the sentence imposed by the court, it's been dated and signed

23  and it may be filed.

24      No. 2, the restitution hearing is set for October 23rd at

25  11:00 a.m. right back in this courtroom.  If the parties are

1   able to agree on a restitution amount before that, prior to

2   that date, please inform us as quickly as possible and we can

3   strike the hearing.

4        And, finally, counsel, I believe it was paragraph 13 of

5   the plea agreement contained a waiver of appeal.  And it said

6   that as part of the plea agreement and on the condition the

7   court imposed a custodial sentence within or below the

8   guideline range, or the statutory mandatory minimum,

9   defendant waives the right to appeal.  Since the court

10  departed from that, and went above the guideline range, the

11  defendant has the right to appeal his sentence.

12       Mr. Masmari, if you wish to appeal the sentence the court

13  has imposed, or any portion of the sentence, all you've got

14  to do is notify your counsel.  They know fully well how to

15  start that process right away.  You can do it without them,

16  simply notify the clerk of our court you wish to appeal the

17  sentence or any portion of it.  The critical thing is if you

18  fail to file your notice of appeal within 10 business days of

19  today -- today being the 31st of July 2014 -- you may forever

20  give up the right to pursue any appeal of the sentence.  Do

21  you understand?

22            THE DEFENDANT:  Yes, I do understand.

23            THE COURT:  Anything further from the government?

24            MR. GREENBERG:  No, Your Honor.

25            THE COURT:  Anything further from the defense?

1          MR. SWIFT:  No, Your Honor.

2          THE COURT:  Gentlemen, thank you.  We'll be at

3     recess.

4                    (The proceedings recessed.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


I, Debbie K. Zurn, RPR, CRR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.


Dated this 26th day of August, 2014.


/s/ *Debbie Zurn*

DEBBIE ZURN
OFFICIAL COURT REPORTER